UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
VINCENT HICKEY, JR.,

                          Plaintiff,

                                                  <u>MEMORANDUM & ORDER</u>
          -against-                               10-CV-1282(JS)(AKT)

STATE UNIVERSITY OF NEW YORK AT
STONY BROOK HOSPITAL,

                          Defendant.
----------------------------------------X
APPEARANCES
For Plaintiff:        Manuel B. Moses, Esq.
                      236 West 26th Street, Suite 303
                      New York, NY 10001

For Defendant:        Toni E. Logue, Esq.
                      Dorothy O. Nese, Esq.
                      New York State Attorney General's Office
                      200 Old Country Road, Suite 460
                      Mineola, NY 11501


SEYBERT, District Judge:

          Plaintiff Vincent Hickey, Jr. ("Plaintiff") commenced

this action on March 22, 2010 against the State University of

New York at Stony Brook Hospital ("Defendant") asserting claims

under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

2000e <u>et</u> <u>seq.</u>  Presently before the Court are the parties'

cross-motions for summary judgment.  For the following reasons,

both motions are DENIED.

<u>BACKGROUND</u>[1]

Plaintiff is Puerto Rican and a Born Again Christian. (Pl. Ex. 8.) Defendant hired him as a full-time permanent painter in its Physical Plant Department subject to a probationary period pursuant to the New York Civil Service Law to commence on November 17, 2005. (Def. 56.1 Stmt. ¶ 14; Pl. 56.1 Stmt. ¶ 1.) Defendant terminated Plaintiff from this position prior to the end of his probationary period on October 27, 2006. (Def. 56.1 Stmt. ¶ 15; Pl. 56.1 Stmt. ¶ 4.)

On March 2, 2007, Plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR") asserting that Defendant subjected him to unlawful discriminatory practices on account of his ethnicity and religion. (Def. 56.1 Stmt. ¶ 16; Pl. 56.1 Stmt. ¶ 5; Pl. Ex. 8.) Before the NYSDHR held a hearing, however, Plaintiff withdrew his complaint pursuant to a Stipulation of Settlement (the "Stipulation") entered into between Plaintiff and Defendant on March 18, 2008. (Def. 56.1 Stmt. ¶ 17; Pl. 56.1 Stmt. ¶ 7; Def. Ex. A.) In exchange for withdrawing his NYSDHR complaint and releasing all claims against Defendant and its employees, Plaintiff was reinstated to his position as a painter, effective April 10,

---

[1] The following material facts are drawn from the parties' Local Civil Rule 56.1 Statements ("56.1 Stmt.") and Counterstatements ("56.1 Counterstmt.") and their evidence in support. Any relevant factual disputes are noted.

2008. (Def. 56.1 Stmt. ¶ 17; Def. Ex. A ¶¶ 2, 10.) Plaintiff's reinstatement was conditioned, however, on his completing a six month probationary period during which he could not proselytize in the hospital or at work and had to report to work on time. (Def. 56.1 Stmt. ¶ 17; Def. Ex. A ¶ 3.) The Stipulation provided for Plaintiff's immediate termination if he breached these terms. (Def. Ex. A ¶ 3.) The Stipulation also stated that "[b]oth parties agree that they are entering into this stipulation willingly, without any coercion or duress." (Def. Ex. A ¶ 9.) Plaintiff disputes that he signed the Stipulation willingly, arguing that he entered into the Stipulation under economic duress. (Pl. 56.1 Counterstmt. ¶ 16.)

Plaintiff was thereafter reinstated as a painter in the Physical Plant Department. His primary supervisor was Fred Eddins, and his day-to-day work was monitored by James Prudenti and Michael Cullen. (Pl. Ex. 14 ¶ 6.) According to Defendant, on April 18, 2008, another supervisor, Joe Sandaire, and Mr. Eddins verbally counseled Plaintiff about his job performance-- specifically, the spackling and painting that he had completed was not satisfactory. (Def. Exs. B, C.) Plaintiff asserts that this conversation never happened because on April 18 he was attending mandatory re-orientation. (Pl. 56.1 Counterstmt. ¶ 20; Pl. Ex. 16.) According to Defendant, on April 22, 2008, Mr. Sandaire and Mr. Eddins again verbally counseled Plaintiff

regarding his job performance--specifically, he was not completing his assignments in a timely fashion and left his work area in disarray. (Def. Ex. D.) Plaintiff again asserts that this conversation never took place. (Pl. 56.1 Counterstmt. ¶ 20.)[2]

On April 22, 2008, pursuant to the Stipulation, Defendant held a meeting with Plaintiff, his supervisors, representatives from Stony Brook University's Office of Diversity and Affirmative Action, Plaintiff's union representative, and Defendant's lawyer to discuss the ground rules for Plaintiff's reinstatement. (Def. 56.1 Stmt. ¶ 20; Pl. Ex. 14.) At the meeting, he was told that he was prohibited from entering occupied patient rooms, that he could not read his Bible in patient rooms or offices,[3] and that he could not distribute materials and/or proselytize on the premises. (Pl. Ex. 14 ¶¶ 8-10.)

Since being reinstated, Plaintiff had regularly worn a lanyard around his neck printed with the phrase "I ♥ Jesus." (Def. 56.1 Stmt. ¶ 23; Def. Ex. E.) Attached to the lanyard was a clear plastic badge holder containing a piece of paper with

---

[2] On April 29, 2008, Plaintiff filed a second complaint with NYSDHR asserting that Mr. Prudenti and Mr. Eddins were retaliating against him for filing the original NYSDHR complaint. (Def. Ex. L.)

[3] Plaintiff could, however, read his Bible in the chapel, in the staff break room, or the lunch room. (Pl. Ex. 14 ¶ 9.)

the handwritten words "Jesus Loves You!" and a drawing of a cross. (Def. Ex. E.) On the reverse side was the handwritten message:

F       False

E       Evidence

A       Appearing

R       Real

(Def. Ex. E.)

On May 1, 2008, Mr. Eddins told Plaintiff that he had to remove the lanyard. (Def. 56.1 Stmt. ¶ 23; Def. Ex. F.) He also explained to Plaintiff that his identification badge, which Plaintiff had clipped to his pants pocket, had to be moved above his waist. (Def. Ex. F.) Mr. Eddins showed Plaintiff Defendant's Administrative Policies and Procedures Manual Code (the "Manual Code"), which described the proper display of employees' identification badges: "above the waist, unencumbered by ornaments, stickers, pins or other material that covers the name and picture." (Def. Exs. F, J.) The Manual Code did not specifically proscribe religious paraphernalia, nor did it specify a dress code or uniform for painters. Plaintiff agreed to wear his badge on his shirt[4] but refused to remove the lanyard. (Def. Ex. F; Def. 56.1 Stmt. ¶ 24.) The following

_____

[4] Plaintiff asserts that his badge was always properly displayed. (Pl. 56.1 Counterstmt. ¶ 23.)

day, Plaintiff filed a grievance through the CSEA Union against Mr. Eddins complaining of religious discrimination. (Pl. Ex. 19.) Because claims of discrimination were outside the scope of his collective bargaining agreement, his grievance was referred to the Office of Diversity and Affirmative Action. (Def. Ex. H.)

On May 21, 2008, Plaintiff met with Mr. Cullen and Mr. Prudenti regarding the proper wearing of his identification badge. He was again advised that it has to be worn above the waist at all times and was told to remove the "I ♥ Jesus" lanyard "because it is not part of [his] uniform." (Def. Ex. K; Pl. 56.1 Counterstmt. ¶ 28.) Plaintiff again refused to remove the lanyard stating that he would do so only if other employees were also required to remove their religious paraphernalia. (Pl. 56.1 Stmt. ¶ 20; Pl. Dep. 93 ("You got to tell the Muslim woman she's got to take her scarf off, and the Hindu, with the turban, and the priests walking around with the crosses, they have to take it off. And the Jewish man with the yarmulke is going to have to take off his yarmulke. It's not fair that you want me to take my lanyard [sic], which I have the freedom of my religion and freedom of speech.").

On May 22, 2008, Mr. Eddins sent Mr. Prudenti an email stating that Plaintiff "is still wearing unauthorized items around his neck and his Hospital id [sic] is always backward

without the picture facing out as it says in the Manual Code." (Def. Ex. G.) That same day, Plaintiff filed another grievance through his union against Mr. Cullen and Mr. Prudenti asserting that they were creating a hostile work environment. (Pl. Ex. 24.)

On June 4, 2008, Plaintiff filed a complaint with the Office of Diversity and Affirmative Action complaining that Mr. Eddins discriminated against him on the basis of his religion. In the complaint, he stated that he had previously requested an accommodation from his union: "change environment, change days a week (M-F), change hours 7am-3:30pm, change supervisor & supervision." (Def. Ex. O.) The complaint did not mention the lanyard.

On or about June 26, 2008, Carmen Cepeda, Defendant's Supervisor of Concierge Services, submitted a complaint accusing Plaintiff of approaching her, her mother, and her aunt and talking "about God and preaching about religion." (Def. Ex. N.) Her complaint states: "We were nervous and scared because he was not Letting [sic] us go to were [sic] we needed to go. . . . We left Vincent talking to himself at the entrance doorway." (Def. Ex. N.) Plaintiff does not recall this incident. (Pl. Aff. ¶¶ 9-10.)

On August 6, 2008, Mr. Cullen sent a memo to Elizabeth McCoy, Defendant's Chief Human Resources Officer, recommending

Plaintiff's termination because of "several incidents and his unsatisfactory job performance." (Def. Ex. Q.) Mr. Cullen cited to the April 18th and 22nd conversations with Mr. Eddins, the May 21st meeting with Mr. Prudenti, and Ms. Cepeda's complaint. (Def. Ex. Q.)[5] The following day, Ms. McCoy sent Plaintiff a letter advising him that his probation period would be terminated effective August 20, 2008. (Def. Ex. T.) Plaintiff requested a review of his termination pursuant to the New York Civil Service Law, which was granted. (Def. 56.1 Stmt. ¶ 40.) The review was held on August 13, 2008 and his termination was sustained. (Def. Ex. R.) On or about August 29, 2008, Plaintiff received a letter from the Office of Diversity and Affirmative Action stating that it had reviewed and investigated his complaints of discrimination and found them to be unsubstantiated. (Def. Ex. S.)

Plaintiff thereafter filed two grievances through his union, one on or around August 13, 2008, and the other on or around September 9, 2008, regarding his termination. (Def. Ex. U.) A hearing was held on September 18, 2008, and on September

---

[5] This memo was preceded by an email from Mr. Prudenti to Lou DeOnis, the Director of Human Resources, dated June 20, 2008, that stated: "Lou, Can you tell me the status of Vincent Hickey's probation. [sic] Considering the amount of ongoing issues we need to move forward in ending his probation. Please advise." (Pl. Ex. 27.)

19, 2008, his grievances were denied for being outside the scope of the union's collective bargaining agreement.  (Def. Ex. V.)

On October 29, 2008, Plaintiff filed a third complaint with NYSDHR asserting that he was terminated because of religious discrimination and in retaliation for his previously filed NYSDHR complaints and grievances.  (Compl. Ex. 5.)  NYSDHR found probable cause to support Plaintiff's allegations (Compl. Exs. 6-7), and the Equal Employment Opportunity Commission issued Plaintiff a Right-To-Sue letter on January 26, 2010 (Compl. Ex. 1).

Plaintiff commenced this action on March 22, 2010 asserting claims under Title VII for religious discrimination and retaliation.  On November 7, 2011, Plaintiff moved for summary judgment, and on November 18, 2011, Defendant cross-moved for summary judgment.  Both motions are currently pending before the Court.

DISCUSSION

Neither party has clearly articulated in its motion papers what (or how many) claims Plaintiff is asserting in this lawsuit, and, in fact, the parties' cross-motions--which both purport to seek summary judgment on all claims--appear to address entirely different claims.  (See Pl. Mot., Docket Entries 25-26 (discussing violations of the First Amendment and the New York State Civil Service Law); Def. Mot., Docket Entry

27 (discussing a Title VII religious discrimination claim and mentioning without discussing a Title VII retaliation claim); Def. Reply, Docket Entry 31 (discussing a hostile work environment claim).) The Complaint, however, clearly states that Plaintiff is asserting only two causes of action under Title VII, and, since Plaintiff is represented by counsel, "the Court has no obligation to construe [the] Complaint liberally," Nat'l Gear & Piston, Inc. v. Cummins Power Sys., L.L.C., --- F. Supp. 2d ----, 2012 WL 1852409, at *19 (S.D.N.Y. May 17, 2012) (internal quotation marks and citation omitted). Thus, the Court interprets the Complaint as asserting only the following causes of action under Title VII: (1) religious discrimination arising out of Defendant's failure to accommodate Plaintiff's wearing the lanyard[6] and (2) retaliatory discharge for Plaintiff's filing the complaints with NYSDHR and grievances with his employer.

The Court will first discuss the standard of review on cross-motions for summary judgment. Then the Court will address the merits of each party's motion separately.

---

[6] Defendant seems to believe that Plaintiff is also asserting a religious discrimination claim arising out of Defendant's failure to accommodate Plaintiff's need to proselytize. However, Plaintiff repeatedly asserts in his papers that he did not seek to proselytize after he was reinstated. Therefore, the Court assumes that Plaintiff's failure to accommodate claim relates solely to his wearing the "I ♥ Jesus" lanyard and, accordingly, will not address Defendant's arguments related to Plaintiff's purported need to proselytize.

I.   Standard of Review

     "Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law." Harvis Trien & Beck, P.C. v. Fed. Home Loan Mortg. Corp. (In re Blackwood Assocs., L.P.), 153 F.3d 61, 67 (2d Cir. 1998); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).

     "The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." Id.; see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). A genuine factual issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To defeat summary judgment, "the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41

(2d Cir. 2000) (quoting Anderson, 477 U.S. at 256). "Mere speculation or conjecture as to the true nature of the facts" will not overcome a motion for summary judgment. Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986); see also Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) ("Mere conclusory allegations or denials will not suffice." (citation omitted)); Weinstock, 224 F.3d at 41 ("[U]nsupported allegations do not create a material issue of fact.").

"The same standard applies where, as here, the parties filed cross-motions for summary judgment . . . ." See Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001) (citing Terwilliger v. Terwilliger, 206 F.3d 240, 244 (2d Cir. 2000)). Thus, even if both parties move for summary judgment and assert the absence of any genuine issues of material fact, "a district court is not required to grant judgment as a matter of law for one side or the other." Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993). "Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." Morales, 249 F.3d at 121 (citation omitted). It is under this framework that the Court analyzes the pending motions.

II.  Plaintiff's Motion for Summary Judgment

Plaintiff's motion for summary judgment seeks the following relief:  (1) an order declaring the Stipulation "unconstitutionally overly broad in preventing him from proselytizing and handing out literature on his faith," and a violation of his rights to free speech and freedom of religion under the First Amendment; (2) an order declaring that Plaintiff's termination violated the New York State Civil Service Law; and (3) an order granting Plaintiff's motion for summary judgment and allowing a trial on the issue of damages. (Pl. Mot. ¶ 55.)  Although Plaintiff appears to be seeking relief for violations of both the First Amendment and the New York Civil Service Law, neither cause of action was pled in the Complaint.  (See Compl. ¶ 4 (stating that the case "concerns a charge of religious discrimination[] under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq."); id. ¶ 43 ("The plaintiff strongly believes that his employment was terminated because of his religion and in retaliation for having filed complaints of discrimination."); cf. Pl. 56.1 Stmt. ¶ 34 ("This suit charged religious discrimination under Title VII . . . .").)

While the Court recognizes that "the pleading requirements under the Federal Rules are relatively permissive, they do not entitle parties to manufacture claims, which were

not pled, late into the litigation for the purpose of avoiding summary judgment," N. States Power Co. v. Fed. Trans. Admin., 358 F.3d 1050, 1057 (8th Cir. 2004); see also Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1314 (11th Cir. 2004) (the "liberal pleading standard for civil complaints under Federal Rule of Civil Procedure 8(a) . . . does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage"), and courts have routinely held that a party "cannot seek summary judgment for himself on a new claim that has not been pled in his complaint," Crow v. Fabian, No. 08-CV-3350, 2010 WL 2464865, at *18 (D. Minn. Feb. 5, 2010), adopted by 2010 WL 2301006 (D. Minn. June 4, 2010); Satchel v. Sch. Bd. of Hillsborough Cnty., No. 05-CV-2239, 2007 WL 570020, at *7 (M.D. Fla. Feb. 20, 2007) (denying a plaintiff's motion for summary judgment on a claim that was "not clearly pled in her complaint," stating that "Plaintiff cannot now raise this claim for the first time in a motion for summary judgment"); cf. Bonenfant v. Kewer, No. 05-CV-1508, 2007 WL 2492030, at *6 n.2 (D. Conn. Aug. 30, 2007) (refusing to address a claim that was "nowhere in [the] complaint" and raised for the first time in opposition to a motion for summary judgment); Spann v. Word of Faith Christian Ctr. Church, 589 F. Supp. 2d 759, 771 n.8 (S.D. Miss. 2008) (same). Thus, the Court will not address Plaintiff's First Amendment and New York State Civil Service Law

claims.  As Plaintiff's motion does not mention or cite to Title

VII once, the Court must deny Plaintiff's motion for summary

judgment.[7]

III. <u>Defendant's Motion for Summary Judgment</u>

        Defendant argues that it is entitled to summary

judgment on Plaintiff's discrimination and retaliation claims.

The Court will address each claim separately.

    A.  <u>Discrimination Claim</u>

        "Under Title VII, an employer cannot discriminate

against any employee on the basis of the employee's religious

beliefs unless the employer shows that he cannot 'reasonably

accommodate' the employee's religious needs without 'undue

hardship on the conduct of the employer's business.'" <u>Philbrook</u>

<u>v. Ansonia Bd. of Educ.</u>, 757 F.2d 476, 481 (2d Cir. 1985)

(quoting 42 U.S.C. § 2000e(j)), <u>aff'd on other grounds</u>, 479 U.S.

60, 107 S. Ct. 367, 92 L. Ed. 2d 305 (1986); <u>accord</u> <u>Baker v. The</u>

<u>Home Depot</u>, 445 F.3d 541, 546 (2d Cir. 2006).  The plaintiff

bears the initial burden of establishing a <u>prima</u> <u>facie</u> case of

---

[7] The Court notes that Plaintiff mentions in the "POINT THREE"
starting on page 18 of his motion (there are two "POINT THREEs,"
one starting on page 15 and the other on page 18), that he was
retaliated against for filing complaints with NYSDHR and
grievances with his employer.  However, the "relief requested"
in paragraph 55 does not mention his retaliatory discharge
claim, and it is unclear whether Plaintiff has in fact moved for
summary judgment on that claim.  Nonetheless, in an abundance of
caution, the Court will address Plaintiff's argument in the
context of Defendant's motion below.

discrimination, after which the burden shifts to the employer to show that "it cannot reasonably accommodate the plaintiff without undue hardship on the conduct of the employer's business." Philbrook, 757 F.2d at 481.

Defendant argues that (1) Plaintiff has failed to establish a prima facie case of discrimination and (2) even if he did, accommodating Plaintiff's religious belief would have resulted in undue hardship on Defendant.[8] The Court disagrees.

### 1. Prima Facie Case

To establish a prima facie case, Plaintiff must show that he (1) "has a bona fide religious belief that conflicts with an employment requirement," (2) "informed the employer of this belief," and (3) "was disciplined for failure to comply with the conflicting employment requirement." Philbrook, 757 F.2d at 481 (internal quotation marks and citations omitted);

---

[8] There are two types of religious discrimination claims that can be brought under Title VII: disparate treatment claims which are analyzed under the McDonnell Douglas burden shifting framework applicable in other Title VII discrimination cases, see, e.g., Mandell v. Cnty. of Suffolk, 316 F.3d 368, 377-78 (2d Cir. 2003), and failure to accommodate cases analyzed under the standard articulated herein, see, e.g., Philbrook, 757 F.2d at 481. Defendant, failing to recognize that there are two distinct types of religious discrimination claims under Title VII, conflates the two standards throughout its papers. Because the Court reads the Complaint to assert only a failure to accommodate claim, it will not address the portions of Defendant's brief discussing the elements of the McDonnell Douglas framework that are inapplicable to failure to accommodate claims.

accord Knight v. Conn. Dep't of Pub. Health, 275 F.3d 156, 167 (2d Cir. 2001).

### a. Bona Fide Religious Belief

In determining whether a plaintiff has a "bona fide religious belief," the Court's analysis is limited to "whether the beliefs professed by [the plaintiff] are sincerely held and whether they are, in his own scheme of things, religious." Eatman v. United Parcel Serv., 194 F. Supp. 2d 256, 268 (S.D.N.Y. 2002) (quoting Patrick v. LeFevre, 745 F.2d 153, 157 (2d Cir. 1984)) (internal quotation marks omitted); cf. Philbrook, 757 F.2d at 481 ("[I]t is entirely appropriate, indeed necessary, for a court to engage in analysis of the sincerity--as opposed, of course, to the verity--of someone's religious beliefs in . . . the Title VII context."). Title VII's definition of religion is broad and includes "all aspects of religious observance and practice, as well as belief," 42 U.S.C. 2000e(j); thus, the statute protects "[i]mpulses prompted by dictates of conscience as well as those engendered by divine commands . . . so long as the [plaintiff] conceives of the beliefs as religious in nature," LeFevre, 745 F.2d at 158; accord Rivera v. Choice Courier Sys., Inc., No. 01-CV-2096, 2004 WL 1444852, at *5 (S.D.N.Y. June 25, 2004).

Here, there is evidence in the record to support the conclusion that Plaintiff believed that the "I ♥ Jesus" lanyard

was a necessary expression of his religion. (See, e.g., Pl. Dep. 93-94.)[9] Whether that belief is sincere is a question of fact that requires trial. See LeFevre, 745 F.2d at 159 ("This Court has consistently held where subjective issues regarding a litigant's state of mind, motive, sincerity or conscience are squarely implicated, summary judgment would appear to be inappropriate and a trial indispensable."); Rivera, 2004 WL 1444852, at *7 ("[T]his Circuit has demonstrated reluctance to rest the granting of a summary judgment motion on the issue of sincerity or otherwise of religious belief." (citations omitted)); cf. Massie v. Ikon Office Solutions, 381 F. Supp. 2d 91, 100 (N.D.N.Y. 2005) ("[Title VII] leaves little room for a party to challenge the religious nature of an employee's professed beliefs.").

Defendant, citing Hussein v. Pierre Hotel, No. 99-CV-2715, 2001 WL 406258 (S.D.N.Y. Apr. 20, 2011), argues that Plaintiff has not met his burden here. The Court disagrees, finding Hussein to be inapposite, or at the very least distinguishable. In that case, the plaintiff, a banquet waiter at an upscale New York City hotel, showed up for work one night with a beard in violation of the hotel's grooming requirements.

---

[9] The Court notes that this evidence is relatively weak; however, for the purposes of Defendant's motion, Plaintiff is the non-moving party and is thus entitled to all reasonable inferences being drawn in his favor.

The Court "recogniz[ing] that it is unusual to grant a summary judgment motion when a party's intent is at issue," nonetheless granted summary judgment in favor of the hotel. The court held, in light of the fact that the plaintiff had been employed by the defendant for almost fourteen years and had never previously mentioned his religion or worn a beard to work, "a reasonable juror could only conclude that [the plaintiff] showed up for work unshaven, and that, when a supervisor complained about his beard, [the plaintiff] used religion as an excuse." Id. at *3. Unlike Hussein and his beard, Plaintiff and his lanyard are overtly religious, and the evidence before the Court does not conclusively establish that Plaintiff was wearing the lanyard for a non-religious reason. See Rivera, 2004 WL 1444852, at *7 (finding that a plaintiff who wore a vest embroidered with "Jesus is Lord" and testified that he felt compelled to wear the name of Jesus on his daily attire satisfied the first element of his prima facie case).

b.   Notice

To satisfy the second element of his prima facie case, Plaintiff must show that he notified Defendant of his conflicting religious belief. See Philbrook, 757 F.2d at 481. Here, Defendant argues that Plaintiff failed to establish notice because: (1) there is no evidence in the record indicating that Plaintiff requested an accommodation to wear his lanyard and (2)

Plaintiff did not raise the potential conflict regarding his uniform prior to wearing the lanyard to work. The Court finds that neither argument warrants an award of summary judgment in Defendant's favor.

With respect to Defendant's first argument, the Court finds that there is somewhat conflicting evidence regarding whether Plaintiff specifically requested an accommodation to wear the lanyard. (Compare Pl. Dep. 85 (Q: When you informed the hospital of your religious beliefs, what specifically were you asking the hospital to permit you to do, if anything? A: To fellowship with people in the chapel--to fellowship with my people, you know, Christian people who wanted to get together."), and Def. Ex. O (Plaintiff's complaint filed with the Office of Diversity and Affirmative Action claiming religious discrimination and seeking a "change environment, changes days a week (M-F), change hours 7am-3:30pm, change supervisor & supervision"), with Pl. Dep. 93 (describing Plaintiff's conversation with Mr. Cullen and Mr. Prudente, where he told them that he would only remove his lanyard if other employees also removed their religious paraphernalia).) Further, the test is whether the employee notified his employer of a conflict--not whether he specifically requested an accommodation. See Brown v. Polk Cnty., Iowa, 61 F.3d 650, 654 (8th Cir. 1995) ("reject[ing] the defendants' argument that

because Mr. Brown never explicitly asked for accommodation for his religious activities, he may not claim the protections of Title VII"). "An employer need have 'only enough information about an employee's religious needs to permit the employer to understand the existence of a conflict between the employee's religious practices and the employer's job requirements.'" Id. (quoting Heller v. EBB Auto Co., 8 F.3d 1433, 1439 (9th Cir. 1993)); accord Chalmers v. Tulon Co. of Richmond, 101 F.3d 1012, 1020 (4th Cir. 1996); Dixon v. The Hallmark Cos., Inc., 627 F.3d 849, 856 (11th Cir. 2010). And while the Court recognizes that "[k]nowledge that an employee has strong religious beliefs does not place an employer on notice that []he might engage in any religious activity," Chalmers, 101 F.3d at 1020; accord Knight, 275 F.3d at 167-68, here, there is evidence that Defendant knew not only that Plaintiff was a devout Born Again Christian, but that he insisted that the lanyard was a necessary expression of his faith (see, e.g., Pl. Dep. 93).

The Court also finds Defendant's second argument to be without merit. Although in most instances "giving notice to co-workers at the same time as an employee violates employment requirements is insufficient to provide adequate notice to the employer and to shield the employee's conduct," Chalmers, 101 F.3d at 1020, courts have held that this rule is inapplicable when the employee was unaware of the conflicting employment

requirement until he was reprimanded for violating it. <u>Cf.</u>
<u>Brown</u>, 61 F.3d at 654 (finding that the plaintiff satisfied the
notice element of his <u>prima facie</u> case by presenting evidence of
disciplinary action that "related directly to [the plaintiff's]
religious activities" because such evidence established that
"the defendants were well aware of the potential for conflict
between their expectations and [the plaintiff's] religious
activities").

The Court finds the <u>Rivera</u> case to be instructive. In
that case, the plaintiff wore a vest with the words "Jesus is
Lord," to work every day from mid-May 2000 when he was first
hired until June 16, 2000 when he was told that it violated the
company's dress code. He was terminated four days later for
failing to comply with the company's dress code. 2004 WL
1444852, at *2. The court denied the defendant's motion for
summary judgment finding that the plaintiff had established a
<u>prima facie</u> case of discrimination under Title VII. The court
specifically held that the plaintiff had satisfied the notice
requirement because he informed his employer of his bona fide
religious belief as soon as he knew a conflict existed:

> We note that the defendant has no written
> policy prohibiting employees from engaging
> in religious expression or practice. The
> regulations to which defendant draws the
> court's attention, which state that couriers
> should dress "neat and in good taste," and
> "conduct themselves in a professional manner

> at all times," could reasonably be
> interpreted so as not to preclude patches of
> the kind worn by defendant. Thus, a
> reasonable jury could find that plaintiff
> was unaware that his religious belief was in
> conflict with an employment requirement
> until June 16, 2000, and that he informed
> [the defendant] of his belief prior to his
> termination on June 20, 2000.

2004 WL 1444852, at *8. Similarly, in the present case, the written policy cited by Defendant, which governs employees' proper display of their identification badges (Def. Ex. J), could reasonably be interpreted as allowing employees to wear religious paraphernalia so long as it does not interfere with their identification badges. Thus, there is a question of fact regarding whether Plaintiff was aware that there was a conflict.

c. Discipline

To satisfy the third element of his prima facie case, Plaintiff must show that he "was disciplined for failure to comply with the conflicting employment requirement." Philbrook, 757 F.2d at 481. Defendant asserts that "plaintiff was counseled, reprimanded, and eventually terminated for insubordination and performance deficiencies not in any way related to his Christian belief." (Def. Mot. 11.) The Court finds, however, that there is also evidence in the record to suggest that Plaintiff was terminated because he refused to remove his lanyard. (See Def. Ex. K (verbal counseling memo from Mr. Cullen to Plaintiff stating that Plaintiff "[was] asked

to remove the statement that [he was] wearing around [his] neck "Jesus Loves You" because it is not part of [his] uniform, but [he] refused); Def. Ex. Q (memo from Mr. Cullen to Ms. McCoy recommending Plaintiff's termination, in part, because he failed to comply with the hospital's uniform policy).) Thus, there is a question of fact whether Plaintiff was, in fact, terminated for wearing the lanyard or for some reason unrelated to the practice of his religion.

## 2. Undue Hardship

If Plaintiff is able to establish a prima facie case, the burden shifts to Defendant to show that "it cannot reasonably accommodate the plaintiff without undue hardship on the conduct of the employer's business." Philbrook, 757 F.2d at 481. Here, Defendant argues that it cannot reasonably accommodate Plaintiff's need to wear the lanyard because doing so would jeopardize Defendant's ability to provide services in a religious neutral manner as required under the Establishment Clause. The Court finds Defendant's argument to be without merit, as courts have consistently held that Title VII's religious accommodation provision does not violate the Establishment Clause. See Tooley v. Martin-Marietta Corp., 648 F.2d 1239, 1244 (9th Cir. 1981) ("Government can accommodate the beliefs and practices of members of minority religions without contravening the prohibitions of the Establishment Clause.");

see also E.E.O.C. v. Ithaca Indus., Inc., 849 F.2d 116, 119 (4th Cir. 1988); Protos v. Volkswagen of Am., Inc., 797 F.2d 129, 136-37 (3d Cir. 1986).[10]

Accordingly, Defendant failed to meet its burden, and its motion for summary judgment must be DENIED.

B.  Retaliation Claim

Title VII retaliation claims are analyzed under the familiar burden-shifting framework first set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed. 668 (1973).  See Gorzynski v. Jetblue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010).  The plaintiff bears the initial burden of establishing a prima facie case of retaliation by

---

[10] In the context of an irrelevant constitutional argument in Defendant's reply brief, counsel asserts that "the Defendant could reasonably conclude, without any discrimination based on religious views, that Plaintiff's wearing the 'FEAR--False Evidence Appearing Real' expression around his neck, in the hospital was inappropriate because it could upset or confuse patients and guests already in a stressful situation and/or interfere with promoting the efficiency of the public service it performs through its employees."  (Def. Reply 8 (emphasis added).)  Even if Defendant had asserted this in support of its argument that accommodation would cause undue hardship, which it did not, "[u]ndue hardship cannot be proved by assumptions nor by opinions based on hypothetical facts."  Anderson v. Gen. Dynamics Convair Aerospace Div., 589 F.2d 397, 402 (9th Cir. 1978); see also Brown, 61 F.3d at 655 ("'Undue hardship requires more than proof of some fellow-worker's grumbling . . . . An employer . . . would have to show . . . actual imposition on co-workers or disruption of the work routine.'" (alterations in original) (quoting Burns v. S. Pac. Trans. Co., 589 F.2d 403, 407 (9th Cir. 1978)).  And Defendant has not provided the Court with any evidence that patients or hospital guests were upset or confused by Plaintiff's lanyard or that it affected other employees' productivity.

demonstrating that "(1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." Gregory v. Daly, 243 F.3d 687, 700 (2d Cir. 2001). Once the plaintiff has satisfied the elements of the prima facie case, a presumption of retaliation arises. See Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 107 (2d Cir. 2011). "The defendant must then articulate a legitimate, non-retaliatory reason for the adverse employment action. If so, the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action." Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010) (internal quotation marks and citation omitted).

Defendant, although recognizing that Plaintiff has asserted a retaliation claim (see Def. 56.1 Stmt. ¶ 51), fails to address it in its motion beyond conclusorily stating in a heading that "Plaintiff cannot show a triable issue of fact concerning his claims of discrimination and retaliation" (Def. Mot. 4). Nonetheless, Defendant does articulate non-retaliatory reasons for terminating Plaintiff's employment--"the plaintiff was counseled, reprimanded, and eventually terminated for insubordination and performance deficiencies" (Def. Mot. 11)--

for which there is some support in the record.[11]  See <u>Dorcely v.</u>
<u>Wyandanch Union Free Sch. Dist.</u>, 665 F. Supp. 2d 178, 217
(E.D.N.Y. 2009).   Thus, the Court assumes that Defendant
concedes that Plaintiff has established a <u>prima facie</u> case of
retaliation, and the burden shifts to Plaintiff to show that "a
retaliatory motive played a part in the adverse employment
actions even if it was not the sole cause."   See <u>Sumner v. U.S.</u>
<u>Postal Serv.</u>, 899 F.2d 203, 209 (2d Cir. 1990).

Plaintiff asserts that he is entitled to summary
judgment on this claim because Defendant's stated reasons are
"clearly fabrications," and are "in such close proximity to Mr.
Hickey's return to work" that they "show[] a predisposed animus
and retaliation for his having filed a complaint with the NYS
Division of Human Rights."  (Pl. Mot. 20.)  The Court disagrees.
While temporal proximity may be sufficient to establish a <u>prima</u>
<u>facie</u> case of retaliation, "without more, such temporal
proximity is insufficient to satisfy [plaintiff]'s burden to
bring forward some evidence of pretext."  <u>Simpson v. N.Y. State</u>
<u>Dep't of Civil Servs.</u>, 166 F. App'x 499, 502 (2d Cir. 2006)

---

[11] <u>See</u>, <u>e.g.</u>, Def. Exs. B-D (verbal counseling memos regarding
Plaintiff's job performance); F-G (emails regarding Plaintiff's
improperly wearing his identification badge and his refusal to
remove the lanyard); N (complaint filed by Ms. Cepeda asserting
that Plaintiff "harassed" her by going "on about God and
preaching about religion"); Q (memo from Mr. Cullen recommending
termination of Plaintiff's probation "[d]ue to several incidents
and his unsatisfactory job performance," including "his outright
refusal to adhere to the [uniform] policy").

(citing <u>Quinn v. Green Tree Credit Corp.</u>, 159 F.3d 759, 770 (2d Cir. 1998)). Further, Plaintiff's assertions that Defendant's stated reasons are "clearly fabrications," are nothing more than attacks on the witnesses' credibility, and "[c]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions." <u>Anderson</u>, 477 U.S. at 255. Accordingly, the Court will not grant summary judgment in favor of Plaintiff on this claim.

The Court does find, however, that Plaintiff has presented enough evidence impugning the credibility of Defendant's alleged non-retaliatory reasons to thwart summary judgment in favor of Defendant. <u>First</u>, Plaintiff denies harassing Ms. Cepeda (Pl. 56.1 Counterstmt. ¶ 30; Pl. Aff. ¶ 9) and asserts that her complaint is falsified or, at a minimum, a case of mistaken identity (Pl. Aff. ¶ 10). In support, he points to her deposition testimony where she describes her harasser as a white male with dark hair (Cepeda Dep. 8); yet, Plaintiff is a Hispanic male with grey hair and a grey beard (Pl. Aff. ¶ 10). <u>Second</u>, Plaintiff attacks the credibility of the verbal counseling memo documenting a conversation that occurred on April 18, 2008 between Plaintiff, Mr. Sandaire, and Mr. Eddins regarding Plaintiff's unsatisfactory job performance (Def. Ex. B), by providing the Court with evidence that he was not working on April 18, 2008 (<u>see</u> Pl. Ex. 16 (indicating that

Plaintiff had mandatory orientation on that date)). (Pl. Aff. ¶ 14.) Finally, Plaintiff denies ever violating the uniform policy. He asserts he always wore his identification badge properly (Pl. Aff. ¶ 13) and points the Court to Defendant's Manual Code which does not specifically proscribe religious paraphernalia unless it encumbers or obstructs his identification badge (Def. Ex. J). Such credibility issues necessitate trial. See Ames v. Cartier, Inc., 193 F. Supp. 2d 762, 772 (S.D.N.Y. 2002) ("Evidence impugning the credibility of defendant's proffered reasons combined with plaintiff's prima facie case, and no more, may--though not necessarily--support a jury finding of unlawful discrimination." (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)).

CONCLUSION

For the foregoing reasons, Plaintiff's and Defendant's cross motions for summary judgment are DENIED. The parties are ORDERED to submit a revised Joint Pre-Trial Order reflecting the claims as articulated herein within thirty (30) days of the date of this Memorandum and Order.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:   July 27, 2012
         Central Islip, NY